IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ALONZO MILLER, SR., | : | |
| | : | Civil Action File No. |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MOODY'S GARAGE, INC. and | : | |
| KEVIN L. GREENE, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

---

### COMPLAINT

---

Plaintiff Alonzo Miller, Sr. ("Miller") brings this Complaint against Defendants Moody's Garage, Inc. ("Moody's Garage") and Kevin L. Greene ("Greene") and shows the Court as follows:

**A.    Introduction**

1.

This is an FLSA case. Defendants are Miller's former employers.  They failed to pay Miller at one-and-one half times his regular rate for all work performed over forty hours during each work week of his employment.

**B.     Jurisdiction and Venue**

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U.S.C § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Moody's Garage is located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**C.     The Parties**

4.

Miller resides in Henry County, Georgia.

5.

Moody's Garage employed Miller as a tow truck driver in and around Atlanta, Georgia from August 8, 2008 until March 26, 2016.

6.

At all times material hereto, Miller has been an "employee" of Moody's Garage as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

7.

Moody's Garage is a corporation organized under the laws of the State of Georgia.

8.

At all times material hereto, Moody's Garage was an "employer" of Miller as defined in FLSA § 3(d), 29 U.S.C. §203(d).

9.

 Moody's Garage is subject to the personal jurisdiction of this Court.

10.

Moody's Garage may be served with process through its registered agent Allen Sigal, 3845 Conley Street, College Park, Georgia 30337.

11.

At all times material hereto, Miller has been an "employee" of Greene as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

12.

Greene resides in DeKalb County, Georgia.

13.

At all times material hereto, Greene was an "employer" of Miller as defined in FLSA § 3(d), 29 U.S.C. §203(d).

14.

Greene is subject to the personal jurisdiction of this Court.

15.

Greene may be served with process at his residence located at 3226 Clifton Farm Drive, Decatur, GA or wherever he may be located.

**D.     Individual Coverage:**

16.

During the Relevant Period, Plaintiff regularly operated tow trucks owned by Defendants for the purpose of providing towing services for the operators and owners of disabled or abandoned vehicles on Interstate and U.S. Highways, thereby keeping the instrumentalities of interstate commerce free from obstructions.

17.

From on or about April 4, 2013 until March 26, 2016 (hereafter "the Relevant Time Period") Miller was "engaged in commerce" as an employee of Moody's Garage as defined in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

E.    **Enterprise Coverage:**

18.

At all times during the Relevant Time Period, Moody's Garage was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 7(a)(1), 29 U  .S.C. § 207(a)(1).

19.

Specifically, at all times material hereto, Moody's Garage had two or more employees who regularly provided towing services for disabled or abandoned vehicles on Interstate and U.S. highways, thereby providing for the free flow of traffic on the national highway system.

20.

Moody's Garage currently has a contract with the College Park, Georgia, Police Department.

21.

During 2013, Moody's Garage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

22.

During 2014, Moody's Garage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

23.

During 2015, Moody's Garage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

24.

During 2016, Moody's Garage had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

25.

During the Relevant Period, Plaintiff and other employees of Moody's Garage handled the following goods which moved in interstate commerce in the furtherance of the commercial purpose of Moody's Garage: trucks, gasoline, engine oil, uniforms, and cellular phones.

26.

During 2013, Moody's Garage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

27.

During 2014, Moody's Garage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

28.

During 2015, Moody's Garage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

29.

During 2016, Moody's Garage had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

30.

During 2013, Moody's Garage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

31.

During 2014, Moody's Garage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

32.

During 2015, Moody's Garage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

33.

During 2016, Moody's Garage had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of  29 U.S.C. § 203(s)(1)(A).

34.

At all times during the Relevant Time Period, Moody's Garage has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

**F.      Statutory Employer**

35.

At all times during the Relevant Time Period, Greene exercised operational control over the Miller's work activities.

36.

At all times during the Relevant Time Period, Greene was involved in the day to day operation of the Moody's Garage in which Miller worked.

37.

At all times during the Relevant Time Period, Moody's Garage vested Greene with supervisory authority over Miller.

38.

At all times during the Relevant Time Period, Greene exercised supervisory authority over Miller.

39.

At all times during the Relevant Time Period, Greene scheduled Miller's working hours or supervised the scheduling of Miller's working hours.

40.

At all times during the Relevant Time Period, Greene exercised authority and supervision over Miller's compensation.

**G.     Exemptions**

41.

At all times during the Relevant Time Period, Miller was not exempt from the maximum hour requirements of the FLSA by reason of any legal exemption.

42.

At all times during the Relevant Time Period, Moody's Garage did not employ Miller in a bona fide professional capacity within the meaning of 29 USC § 213 (a)(1).

43.

At all times during the Relevant Time Period, Moody's Garage did not employ Miller in a bona fide administrative capacity within the meaning of 29 USC § 213 (a)(1).

44.

At all times during the Relevant Time Period, Moody's Garage did not employ Miller in a bona fide executive capacity within the meaning of 29 USC § 213 (a)(1).

45.

At all times during the Relevant Time Period, Miller did not supervise two or more employees.

46.

At all times during the Relevant Time Period, Moody's Garage did not employ Miller in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a)(1).

47.

At all times material hereto, Miller was not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

48.

At all times material hereto, Miller was not exempt from the maximum hour requirements of the FLSA because of the Motor Carrier Exemption (29 U.S.C. § 213(b)(1)).

49.

At all times material hereto, Miller's work for Defendants did not involve interstate commerce as defined by the Motor Carrier Act (49 U.S.C.A. § 10521).

50.

At all times material hereto, Miller operated flatbed tow trucks in his performance of work on behalf of Defendants.

51.

During all times relevant, Miller did not operate tow trucks with a curb weight greater than 10,000 pounds.

52.

At all times material hereto, Moody's Garage was not an operator within the purview of the Motor Carrier Act (49 U.S.C.A. § 3102).

53.

At all times material hereto, Miller did not operate "commercial motor vehicle[s]" within the meaning of the Motor Carrier Act (49 U.S.C.A. § 31132(1)).

54.

Section 7 of the FLSA (29 U.S.C. § 207) requires that Defendants compensate Miller at a rate of one and one half times his regular rate for each hour worked in excess of forty (40) hours in a work week.

55.

Defendants knew or should have known that the FLSA applied to Miller.

56.

Defendants knew or should have known that the Section 7 of the FLSA requires that Defendants compensate Miller a premium for all hours worked above forty in a given workweek.

57.

At all times during the Relevant Time Period, Miller regularly worked more than forty hours in a given workweek.

58.

At all times during the Relevant Time Period, Defendants compensated Miller on an hourly basis plus commissions.

59.

29 C.F.R. § 778.118 sets forth the manner for calculating overtime wages to employees who receive a portion of their earnings in commission each week.

60.

29 C.F.R. § 778.118 requires that the sum total of the commission earned and other earnings be divided by the total hours worked in order to determine the regular hourly rate.

61.

29 C.F.R. § 778.118 further requires that "(t)he employee must be paid extra compensation at one-half that rate for each hour worked in excess of" forty hours per week.

62.

During the Relevant Period, Defendants failed to calculate a regular rate for Miller by dividing the sum total of the commission he earned and other earnings by the total hours worked.

63.

During the Relevant Period, Defendants failed to pay Miller at one-and-one-half times this regular rate for work he performed in excess of forty (40) hours per week.

## COUNT 1 FAILURE TO PAY OVERTIME

### 64.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

### 65.

At all times during the Relevant Time Period, Miller has been an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

### 66.

At all times during the Relevant Time Period, Miller regularly worked in Defendants' employ in excess of forty (40) hours each week.

### 67.

At all times during the Relevant Time Period, Defendants failed to pay Miller at one and one half times his regular rate for work in excess of forty (40) hours in any week from April 4, 2013 through March 26, 2016.

### 68.

Defendants willfully failed to pay Miller at one and one half times his regular rate for work in excess of forty (40) hours in any week from April 4, 2013 through March 26, 2016.

69.

Miller is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

70.

As a result of the underpayment of overtime compensation as alleged above, Miller is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

71.

As a result of the underpayment of overtime compensation as alleged above, Miller is entitled to his litigation costs, including his reasonable attorneys' fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Miller respectfully prays:

1.  That Plaintiff be awarded due but unpaid overtime compensation in an amount to be determined at trial against Defendants, jointly and severally,

2.  That Plaintiff be awarded liquidated damages in an amount equivalent to his due but unpaid overtime compensation against Defendants, jointly and severally;

3.  That Plaintiff be awarded his costs of litigation, including his reasonable attorneys' fees from Defendants jointly and severally; and

4.  For such other and further relief as the Court deems just and proper.

Respectfully submitted,

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

3100 CENTENNIAL TOWER
101 MARIETTA STREET                    /s/CHARLES R. BRIDGERS
ATLANTA, GEORGIA 30303                 CHARLES R. BRIDGERS
(404) 979-3171                         GA. BAR NO. 080791
(404) 979-3170 (f)
kevin.fitzpatrick@dcbflegal.com        /s/ KEVIN D. FITZPATRICK, JR.
charlesbridgers@dcbflegal.com          KEVIN D. FITZPATRICK, JR.
                                       GA. BAR NO. 262375

                                       COUNSEL FOR PLAINTIFF